```
                    UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF OHIO
                           EASTERN DIVISION
```

Billy J. Dunfee,                :
                                :
        Plaintiff,               :      Case No. 02-cv-00315
                                :
    v.                           :      Judge Graham
                                :
Ron Greenwood, et al.,           :      Magistrate Judge Kemp
                                :
        Defendants.              :

**MEMORANDUM OPINION AND ORDER**

On December 7, 2004, a jury rendered a verdict in favor Defendants Ronald J. Greenwood and Travis H. Woodyard ("defendants"). The jury found that the defendants, Ohio State Highway Patrol troopers, did not use excessive force in violation of the Fourth Amendment when detaining and arresting Billy J. Dunfee ("plaintiff"). This matter is now before the court on plaintiff's motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure.

**I.  Legal Standard**

Under Rule 59, a new trial may be granted after a jury trial "for any of the reasons for which new trials have been heretofore granted in actions at law in the courts of the United States...." See FRCP 59(a)(1). Trial courts have used this authorization to grant a new trial where the jury's verdict is against the clear weight of the evidence, the damages are excessive, or there were

1

substantial errors of law in the trial that resulted in prejudice. Grimm v. Lane, 895 F. Supp. 907, 911 (S.D. Ohio 1995) [citations omitted]. In this motion, plaintiff argues that a new trial should be awarded because the verdicts are against the clear weight of the evidence, substantial errors of law occurred resulting in prejudice, and newly discovered evidence exists that warrants a new trial.

## II.   Discussion

### A) The Clear Weight of the Evidence

When presented with a motion for a new trial based on the grounds that the verdict is against the weight of the evidence, the district court must compare the opposing proofs, weigh the evidence, and then set aside the verdict if it believes that the verdict is against the clear weight of the evidence. J.C. Wyckoff & Associates v. Standard Fire Ins. Co., 936 F.2d 1474, 1487 (6th Cir. 1991) (citing TPC Indus., Inc., v. Iniroyal, Inc., 661 F.2d 542, 546 (6th Cir.1981)). The court must uphold the verdict if it could reasonably have been reached. Id. A verdict is not unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable. Id. While a court is free to re-weigh the evidence, it may not set aside a jury verdict merely because it draws different inferences or conclusions or because a different

2

result is more reasonable.  Bruner v. Dunaway, 684 F.2d 422, 425 (6th Cir. 1982)(quoting Tennant v. Peoria & P.U. Ry. Co., 321 U.S. 29, 35 (1944)).

Plaintiff presents a list of one hundred "undisputed" factors to support his claim that the jury's verdict is against the clear weight of the evidence.  However, this list fails to expose the jury's verdict as unreasonable because few of the listed factors directly address the ultimate question in this case: whether or not defendants used excessive force.  Moreover, the "undisputed" factors that do directly address this issue are not "undisputed" as plaintiff claims.

For example, in factors 34, 35, and 36, plaintiff claims it is undisputed that his hands were outside the car before he was pulled out by defendants.  In reality, plaintiff and defendants, after viewing the video, provided conflicting testimony as to whether or not plaintiff's hands were outside the car.  Moreover, the jury viewed a videotape of the incident, but the tape's lack of clarity allowed both plaintiff and defendants to argue that it supported their positions.  In light of the conflicting testimony and inconclusive videotape, this court cannot hold that the jury's decision is against the weight of the evidence.

Similarly, plaintiff argues in factors 45, 46, and 47 that defendants have taken inconsistent positions with respect to

3

plaintiff reaching under the front seat during the stop.[1]  After reading the relevant testimony, this court finds the statements to be reasonably consistent in that both defendants state that when they saw plaintiff's hands reach down over the crest of the seat, they immediately grabbed plaintiff and pulled him from the

---

[1] In an attempt to show inconsistency, plaintiff reproduces several sections of defendants' testimony.  Factor 45 contains an excerpt from Defendant Greenwood's criminal trial testimony:

>A. When I opened the door I stepped back between the door and Mr. Dunfee.  Trooper Woodyard was stepping closer to Mr. Dunfee. **When he started reaching down to the side that's what I thought he was going to do was grab the pouch and toss it.** Trooper Woodyard had a better view of Mr. Dunfee's hands at that point. (Tr. pp. 227-28)

Factor 46 contains an except from Defendant Woodard's criminal trial testimony.
>Q. Alright. And what happened after that?
>A. Then I believe, like I said, I don't remember if I opened the door or Sgt. Greenwood opened the door. And he tells him not to be reaching under his leg. And about that time he goes from where his hand was before and **I see his hand go in front of him and clear the front of the seat like he was reaching down underneath the front of the seat with his right hand.**
>Q. Could you demonstrate that, please?
>A. It was just like this. And we were back here. And he goes just like this and starts to reach down like that. And that's when I grabbed his right arm and pulled him from the vehicle onto the ground. (Tr. pp. 236)

Finally factor 47 contains a excerpt from Woodyard's deposition in June, 2003.
>Q. But your from vantage point, you couldn't see him reach under the seat. You simply saw his hand go down; would that be correct?
>**A. Down over the crest of the front of the seat, yes. I didn't let him reach under the seat. That's when he -- when he reached under the seat, that's when I grabbed his arm**.
>Q. So he never went under the seat, then? You got him before he went under the seat?
>A. Correct.

4

vehicle.

Next, Plaintiff maintains in factor 55 and 56 that his words or acts during the incident never amounted to a threat to the officers.  Defendants disagree by referencing evidence showing that plaintiff reached toward the floorboard or underneath the seat, resisted the officers by locking his thumb into his belt loop, and grabbed defendant Greenwood's ASP baton and refused to release it during the incident.  Based on this evidence, especially the control of and refusal to release the ASP baton, the jury could have reasonably concluded that plaintiff did threaten defendants as they attempted to place him in handcuffs.

After reviewing the evidence, this court finds that the jury's verdict has sufficient evidentiary support and is not unreasonable.  Certainly, different inferences and/or conclusions could be drawn from the disputed evidence presented; however, that is not enough to justify setting aside the jury's verdict. This court may only order a new trial if the jury's decision is against the clear weight of the evidence.  The evidence does not clearly support plaintiff's version of events, and therefore, this court must decline to alter the jury's decision.

**B) Substantial Errors of Law Resulting in Prejudice**

Plaintiff also seeks a new trial alleging that substantial errors of law occurred, resulting in prejudice.  Specifically, plaintiff alleges that the court's failure to charge the jury on

5

arrest, probable cause, and deadly force was prejudicial to plaintiff's claim.

As an initial matter, defendants correctly note that objections regarding jury instructions must be made at the trial in order to preserve such objections for appeal. Grimm, 895 F. Supp. at 911; Libbey-Owens-Ford Company v. Insurance Company of North America, 9 F.3d 422, 427 (6th Cir.1993).  Specifically, the Sixth Circuit requires that:

> a formal objection be made before and after the jury instructions are given, unless "it is plainly apparent from the discussion between the parties and the judge that the judge was aware of a party's dissatisfaction with the instruction, as read to the jury, and the specific basis for that claimed error or omission."

See Libbey-Owens-Ford Company, 9 F.3d at 427 (citations omitted).

Plaintiff failed to object to the lack of instructions on probable cause and arrest both before and after the instructions were read to the jury.  Plaintiff's failure to object constitutes waiver of any error for failing to charge on probable cause and arrest issues.  Further, no issues or claims were presented at trial in regard to whether the officers had probable cause to arrest plaintiff.  Therefore, it was proper to not instruct on these points.  Plaintiff cannot inject a Fourth Amendment claim alleging lack of probable cause to arrest for the first time in post-trial motions.

With respect to the deadly force instruction, plaintiff

6

suggested during the charge conference that a deadly force instruction be added. Plaintiff then expressed his dissatisfaction with the instructions, as written, and the specific basis for that dissatisfaction. This court denied the suggested instruction because the evidence presented was insufficient to justify a deadly force charge. The court went on to explain that the issue is whether excessive force was used, and that charging the jury on deadly force would be prejudicial and potentially confusing in light of the evidence presented.

    A judgment may be reversed only if the instructions are confusing, misleading, or prejudicial. Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1011 (6th Cir. 1987). Jury instructions, when reviewed as a whole should adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach a decision. Webster v. Edward D. Jones & Co., 197 F.3d 815, 819-820 (citing Innes v. Howell Corp., 76 F.3d 702, 714 (6th Cir. 1996)). A reversible error exists only if the omitted instruction is a correct statement of the law; the instruction is not substantially covered by other delivered charges; and the failure to give the instruction impairs the requested party's theory of the case. Webster, 197 F.3d at 820 (citing Sutkiewicz v. Monroe County Sheriff, 110 F.3d 352, 361 (6th Cir. 1997)). The burden of showing prejudice is on the party seeking the new trial. Grimm, 895 F. Supp. at 911 (citing

7

<u>Clarksville-Montgomery County School Syst. V. United States Gypsium</u>, 925 F.2d 993, 1002 (6th Cir.1991).

Plaintiff relies on <u>Tennessee v. Garner</u>, 471 U.S. 1 (1985), and argues that the jury should have been instructed that the defendants were only authorized to use deadly force once they had probable cause to believe that deadly force was necessary to save or protect life. While this is a correct statement of the <u>Garner</u> standard, it does not apply in this case. In <u>Garner</u>, the suspect was fleeing from the officer, the deadly force used was a shot from the officer's firearm, and the suspect died. Here, no gun or weapon was used, and, based on the evidence presented the force did not meet the definition of deadly force.

Whether deadly force has been used in a seizure is a determination that must be made on a case-by-case basis. <u>Robinette v. Barnes</u>, 854 F.2d 909, 912 (6th Cir. 1988). In <u>Robinette</u>, a police dog was ordered to search a building for a burglary suspect. During the search the dog bit the suspect in the neck causing his death. The Sixth Circuit affirmed a grant of summary judgment for the defendant officer, holding that, as a matter of law, the use of a properly trained police dog did not amount to the use of deadly force. <u>Id</u>.

In reaching that decision, the Sixth Circuit adopted the definition of "deadly force" promulgated in the American Law Institute's Model Penal Code. The Model Penal Code defines

8

deadly force as:

> [F]orce which the actor uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily harm. Purposely firing a firearm in the direction of another person or at a vehicle in which another person is believed to be constitutes deadly force.

The court in Robinette went on to say that the two most relevant factors in determining whether a particular law enforcement tool constitutes deadly force are: (1) the intent of the officer to inflict death or serious bodily harm, and (2) the probability, known to the officer but regardless of the officer's intent, that the tool, when employed to facilitate an arrest, creates a substantial risk of causing death or serious bodily harm. Id.

Application of these factors to the evidence presented during trial reveals that a deadly force instruction was not warranted. The only alleged use of deadly force was two strikes to the face with a closed fist delivered while defendants struggled with plaintiff. Evidence was submitted that defendants struck plaintiff elsewhere on the body with an ASP Baton, but no evidence was presented that defendants ever struck plaintiff in the head or face with a weapon or any other law enforcement tool.[2] Moreover, Dr. Ruksensas, plaintiff's expert medical witness, who appeared via video-tape deposition, testified

---

[2] This decision is limited to the deadly force evidence presented in this case - two strikes to the face of a resisting suspect with a closed fist - and should not be interpreted as a broader statement requiring that a gun or weapon is necessary for force to be considered deadly.

9

regarding the blows to the face that, "[y]es, I suppose it could cause injury" and "[i]t could cause harm, I suppose, yes." Plaintiff's expert did not say that two strikes with a closed fist creates a substantial risk of "death" or "serious bodily harm" as required by the Model Penal Code's definition of deadly force. Plaintiff simply failed to present any evidence that defendants acted with the purpose of causing or creating a substantial risk of death or serious bodily harm.

Furthermore, the deadly force instruction, had it been read to the jury, would have been confusing and prejudicial. A deadly force instruction would have required the jury to evaluate defendant's conduct under two different criteria: (1) a reasonableness standard to determine if excessive force was used, and (2) probable cause to justify the use of deadly force. The second branch of the analysis was unnecessary based on the evidence presented. In addition, the deadly force instruction was potentially prejudicial as it may have been interpreted as affirmation of plaintiff's deadly force claim despite insufficient evidence to support that claim. A deadly force charge could also have misled the jury into thinking that they had to find that deadly force was used in order to return a verdict for the plaintiff, when in fact, only excessive force under the circumstances was required, potentially a much lesser degree of force. Instead, the single instruction on excessive

force enabled the jurors to evaluate plaintiff's and defendants' actions on a continuum and under a single standard to determine if defendants' actions were reasonable in light of plaintiff's resistence.

For the foregoing reasons, this court finds that the jury instructions as given, were neither confusing, misleading, or prejudicial.  Therefore, plaintiff's motion for a new trial based on substantial errors of law is denied.

### C) Newly Discovered Evidence

Lastly, plaintiff claims that a new trial is warranted because of new evidence that members of the Ohio State Highway Patrol erroneously felt that plaintiff had a criminal history of violent confrontations with officers.  The new evidence is a letter to the editor of the Athens Messenger written by Captain George T. Maier, District Commander of the Ohio State Highway Patrol, Jackson, Ohio office.  The letter was published on December 21, 2004, and concerns local media coverage of the trial.  In the letter, Captain Maier said that plaintiff "had a criminal history of violent confrontations with officers." Plaintiff, in his motion for a new trial, claims that this is false and that it may have caused defendants to over-react, use excessive force, and be less than professional with plaintiff.

Under Fed. R. Civ. P. 59, courts have the power to grant a new trial and/or provide relief from judgment because of newly

11

discovered evidence.  To justify a new trial, the movant must demonstrate that the new evidence is admissible and of a nature that it would probably bring about a different result at the new trial.  <u>Winer v, United States</u>, 228 F. 2d 944, 952 (6th Cir. 1956); <u>Harrison v. Brooks</u>, 519 F.2d 1358, 1360 (1st Cir. 1975).  <u>See</u> <u>also</u> Wright & Miller, 11 Fed. Prac. & Proc. Civ. 2d §2802 (2005).

Plaintiff's motion must be denied because plaintiff has offered no evidence to show that defendants had knowledge of this information at the time of the incident.  Moreover, even if defendants in good faith did believe that plaintiff had a history of violent confrontations with officers, whether true or not, that knowledge would only support defendants suspicion that plaintiff might use a weapon to resist and further justify defendants' use of force.

Plaintiff argues that the new evidence "may well explain why these Defendants over-reacted, used excessive and deadly force and were less than professional with [plaintiff]."  However, this argument, even if true, would fail to justify a new trial because the jury found that the defendants did not use excessive force.  The jury answered twenty-two interrogatories demonstrating their belief that defendants actions were reasonable under the circumstances.  Thus, the new evidence, which purports to demonstrate a motive for the use of excessive force is irrelevant

12

and incapable of changing the outcome of the trial, since the jury has already found that excessive force was never used.  For this reason, plaintiff's motion for a new trial because of newly discovered evidence is denied.

### III.   Conclusion

For the foregoing reasons, plaintiff's motion for a new trial is denied.

It is so ORDERED.

> s/James L. Graham
> JAMES L. GRAHAM
> United States District Judge

DATE: August 24, 2005